IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RONNIE HART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0357 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant.[1] | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff RONNIE HART brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on January 26, 2000, with a protective filing date of December 29, 1999. (Transcript [hereinafter

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue should be substituted as the defendant in this suit.

Tr.] 51, 52-54).[2]  Plaintiff alleges an onset date of May 24, 1994 (Tr. 51).  Plaintiff's impairments include a neck and back condition, degenerative cervical disease, diabetes mellitus with peripheral neuropathy, blurred vision, hearing loss and chronic depression.  (Tr. 16, 93-96, 454, 456, 458, 468).  It was determined at the administrative level that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16).  Plaintiff was born May 5, 1946 and the record shows he completed the eighth grade.  (Tr. 82, 449).  According to plaintiff's Work History Report, and as found by the Administrative Law Judge ("ALJ"), plaintiff worked for approximately twenty years for the City of Amarillo in the water distribution department and most recently worked as a water and sewer foreman.  (Tr. 20, 85).

The Social Security Administration denied benefits initially and upon reconsideration.  An administrative hearing was held before ALJ David R. Wurm on September 18, 2002.  (Tr. 444-486).  On October 16, 2002, ALJ Wurm rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision.  (Tr. 15-20).  The ALJ found that plaintiff has no impairment or combination of impairments of such severity as to medically meet or equal any condition described in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 16).  The ALJ concluded plaintiff retains the residual functional capacity (RFC) which,

> ...supports work activities involving lifting of no more than 30 pounds occasionally and 15 pounds more frequently, which allow the worker to alternate sitting, standing and walking as needed, which involve only occasional pushing and pulling and occasional postural positions such as bending, stooping, reaching, crouching, crawling and climbing, which require no work at heights or around hazardous conditions, which involve only limited noise and vibration, and which accommodate moderate restriction of his capabilities for social functioning.

---

[2] As noted by both parties, plaintiff previously filed for benefits on January 28, 1998 with the same onset date alleged herein.  Such application was denied at all administrative levels.

(Tr. 18, Finding No. 6). Based on this RFC, and upon vocational expert testimony, the ALJ found plaintiff could not return to work he had performed in the past, but could perform other work that exists in significant numbers in the regional and national economies. (Tr. 20, Finding Nos. 7 and 10). The ALJ thus concluded plaintiff was not under a disability at any time through the date of his decision.

Upon the Appeals Council's denial of plaintiff's request for review on September 26, 2003, ALJ Wurm's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 6-10). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the

Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence on the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies as determined by the ALJ, and whether the proper legal standards were applied in making this determination. To this extent, plaintiff presents the following issues:

1. The ALJ findings and conclusions that petitioner's testimony is not supported by substantial evidence was in error specifically:

    A. The ALJ erred in his determination that petitioner's testimony he suffered severe neck and back pain which was getting worse was not supported by evidence in the record;

    B. The ALJ erred in his determination that petitioner's testimony his legs give way due to numbness and tingling was not supported by evidence in the record;

2.   Whether the ALJ determination that petitioner retains the residual functional capacity to perform other work existing in significant numbers in the national or local economy is supported by substantial evidence specifically: Whether the ALJ failed to give proper weight to plaintiff's treating physicians.

## IV.
## MERITS

Plaintiff first argues the ALJ erred in his determination that petitioner's testimony that he suffered from severe neck and back pain which was getting worse was not supported by substantial evidence in the record and in his determination that petitioner's testimony that his legs give way due to numbness and tingling was not supported by evidence in the record. More specifically plaintiff complains the ALJ failed to consider the opinions of Drs. Carroll Moore, Charles Rimmer and Stephen Usala and discounted the opinions of Drs. Neil Veggeberg and Ruby Saulog. In his opinion the ALJ stated,

> The claimant's reports and testimony of symptoms and functional restrictions was not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility. He has reported severe neck pain to his doctors, and he testified that his neck pain is getting worse. However, clinical examination of his neck, including examination as recently as June 24, 2002, has consistently revealed that his neck motions are supple, and that his muscles are strong. The results of his cervical MRI testing conducted on July 15, 1997 revealed only mild spurring, mild diffuse spondylosis producing mild compression of the underlying neural structures, "possibly" associated with mild bilateral foraminal stenosis. His post-CT myelogram revealed only mild diffuse spondylosis producing mild effacement of the ventral surface on the right. While the results of his cervical MRI performed on May 2, 2000 found right paracentral disc bulging causing narrowing of the right neural foramina, the thecal sac was generous, and there was no evidence of nerve root impingement. These results are essentially mild in nature, and consistent with the results of claimant's clinical examinations. The evidence does not indicate that the claimant's neck condition is worsening.
>
> The claimant testified that his legs give way because of numbness and tingling, but his clinical examinations have not discovered any corroborating muscle weakness or muscle atrophy. On clinical examination his gait and station have consistently been normal. Moreover, it is of interest that although the claimant

> has complained persistently of numbness and tingling of his upper and lower extremities, and Dr. Saulog states that he has lower extremity peripheral neuropathy, she has conducted nerve testing only of his upper extremities. Apparently, her diagnosis of lower extremity neuropathy has been based solely on the claimant's reports of symptoms and functional difficulties associated with his lower extremities. This is especially noteworthy, because that physician's own clinical evaluations of he patient have failed to discover significant abnormalities of the claimant's lower extremities.

(Tr. 17, internal cites omitted). Plaintiff cites to specific medical records in this case and argues the ALJ failed to consider and/or give credence to several of plaintiff's treating physicians. First, plaintiff argues the ALJ did not note the opinion of Dr. Charles Rimmer a neurologist. Plaintiff cites to a medical report by Dr. Rimmer dated March, 17, 1997 wherein he makes the comment, "he is deteriorating and he is unable to resume his normal activities of daily living." (Tr. 577). However, the ALJ was entitled to consider this comment as a recitation of plaintiff's representation to the doctor. Further review shows Dr. Rimmer recommended plaintiff undergo testing because his prior studies were so old and the doctor wanted medical clarification. (Tr. 577). It appears plaintiff went for further testing and as a result, Dr. Rimmer wrote a letter to Dr. Carroll Moore on May 5, 1997 in which he stated,

> His diagnostic studies including an EEG was read as normal. His MRI scan of the brain was read as normal...In the cervical spine series it appeared that he had normal appearance with some anterior annular fibrosis at C4-5 and 6-7. The AP diameter of the canal was in the normal range. MRI Scan of the cervical spine did show evidence of a small anterior ridge at C4-5 and on the axial views the spinal canal is narrowed but not to a point that it looks like it would be a surgical lesion in my judgment. The lumbar sacral spine region was read as showing mild bilateral facet arthropathy but with no evidence of spondylolysis or spondylolisthesis. The MRI Scan of the lumbar sacral spine showed desiccation of the intervertebral disc with a slight bulging at L2-3 and L4-5. No evidence of pressure on the cardia equina or the nerve roots was seen. I think the patient should have another trial physiatrist treatment.

(Tr. 573-74). Although the better practice would be for the ALJ to acknowledge Dr. Rimmer's

opinion, the fact the ALJ's opinion does not specifically refer to Dr. Rimmer's opinion does not establish that the ALJ failed to consider it. This is true especially in light of the fact that Dr. Rimmer's opinion makes relatively mild findings and is consistent with the ALJ characterization of plaintiff's condition. As for Dr. Moore's notes, the same holds true. The ALJ may not have specifically cited to the records of Dr. Moore but he was not required to do so. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Dr. Moore treated plaintiff from April of 1994 until August of 1996 in the context of his on the job injury. (Tr. 133-144). Throughout this treatment it was noted plaintiff had minimal to no neurological deficits and during this time plaintiff had some improvement. (Tr. 136). In August of 1996 the doctor noted, "In examining him, on his neurological exam, his reflexes seems (sic) to be intact, and sensation to light touch is equal and intact. His muscle testing seems to be equal and intact. He is quite tender across the lower back [from a recent fall] and the mid portion of his lumbar spine and hip. There is not trochanteric tenderness." (Tr. 133-34). The doctor opined overall plaintiff could not return to his prior work, an opinion shared by the ALJ. (Tr. 20, 614). Finally, as to the records of Dr. Stephen Usala, it should first be noted Dr. Usala's treatment of plaintiff was primarily in the field of endocrinology and assisting plaintiff with his diabetes treatment. Plaintiff refers to the transcript at 225-26 stating this record shows plaintiff to have a spinal cord compression. Actually this record covers the period when plaintiff was hospitalized briefly and Dr. Usala was hypothesizing about the cord compression. (Tr. 226). Upon further testing, Dr. Usala noted on July 21, 1997, "Mr. Hart returns after being hospitalized last week. He was hospitalized to rule out cord compression. Also, the diagnosis of cardiac ischemia was entertained. A Myelogram showed no significant cord compression in the cervical and lumbar regions." (Tr. 309). The ALJ noted

plaintiff suffered from diabetes and that he was being treated.

Plaintiff also argues the ALJ failed to give proper weight to two of plaintiff's treating physician's Dr. Ruby Saulog and Dr. Neil Veggeberg. In analyzing the notes of Dr. Saulog the ALJ stated,

> Moreover, it is of interest that although the claimant has complained persistently of numbness and tingling of his upper and lower extremities, and Dr. Saulog states that he has lower extremity peripheral neuropathy, she has conducted nerve testing only of his upper extremities. Apparently, her diagnosis of lower extremity neuropathy has been based solely on the claimant's reports of symptoms and functional difficulties associated with his lower extremities. This is especially noteworthy, because that physician's own clinical evaluations of he patient have failed to discover significant abnormalities of the claimant's lower extremities.

(Tr. 17). Between June of 2000 and November of 2000 Dr. Saulog noted,

> Neurological exam: Neck muscles strong. Motor exam: Normal tone, no abnormal movements, no atrophy; I still appreciated some mild weakness in his left grip at 4+/5. Strength of the rest of both upper extremities and both lower extremities was 5/5...Gait: Normal.

(Tr. 360-63). Stated another way, clinical testing of plaintiff revealed mild to normal results. Although the doctor opined in March of 2002 plaintiff could not work an 8-hour workday, this finding was determined by the ALJ as not consistent with her medical notes. It cannot be said the ALJ erred in this regard.

Finally, plaintiff cites to the medical records of his treating physician Dr. Neil Veggeberg who has repeatedly classified plaintiff as being totally disabled. The ALJ noted this doctor's opinions and went so far as to point out inconsistencies in the doctor's opinion and why he discounted such opinions. (Tr. 16-17). Review of Dr. Veggeberg's medical notes demonstrates he has held the opinion that plaintiff was disabled from the beginning of treatment. It is not disputed that plaintiff had a medical condition and was medically retired from his position with

the City of Amarillo because he could no longer perform the required job duties.  However, his medical retirement from his prior employment, which was classified by the VE as heavy and which the ALJ found plaintiff unable to perform, and the question of whether plaintiff was disabled in the Social Security context is a different issue and is one to be determined by the ALJ.  In this case, the ALJ discounted these doctors' opinions of disability because he found them to be unsupported by clinical evidence as well as contrary to testing by other physicians.  (Tr. 18).  As argued by defendant, "The ALJ noted that examinations revealed plaintiff to have a normal gait and station, normal muscle tone and strength, only mildly reduced grip strength and giveaway weakness, no muscle atrophy, no abnormal movements, no reduced ranges of motion, and no major neurological deficits.  (Defendant's Brief at 8 citing Tr. 16, 367-370).  Although the findings and opinions of treating physicians are entitled to great weight, they are not unassailable.  The ALJ was entitled to make the determination he made and to discount this treating physician's opinion, especially in light of clinical evidence to the contrary.  For these reasons plaintiff's first issue should be denied.

     Plaintiff next argues the ALJ determination that petitioner retains the residual functional capacity to perform other work existing in significant numbers in the national or local economy is not supported by substantial evidence.  More specifically, plaintiff again argues the ALJ failed to give proper weight to plaintiff's treating physicians.  Unlike some social security disability cases reviewed by this Court where the medical evidence of record is minimal, there is an enormous amount of medical evidence in this case.  In addition, to the evidence outlined previously, both Drs. Veggeberg and Saulog completed residual functional capacity (RFC) assessments on plaintiff.  In April 10, 2000, Dr. Veggeberg determined plaintiff had limitations

which have been present since July 1, 1993 and which included the ability to sit 2 hours in an 8-hour workday, stand ½ hour in an 8-hour workday, walk ½ hour in an 8-hour workday, work 2 hours in an 8-hour workday, lift up to 10 pounds occasionally and 11-100 pounds never due to cervical disk disease/spinal stenosis/diabetic neuropathy, carry up to 10 pounds occasionally but 11-100 pounds never, use hands for repetitive actions such as simple grasping and pushing and pulling but not for fine manipulation, use feet for repetitive actions (foot controls) with both feet, can occasionally Bend, Squat, Stoop, Crouch and Kneel but can never Crawl, Climb, and Reach above due to cervical disk disease, can never tolerate exposure to unprotected heights and being around moving machinery, can occasionally tolerate exposure to marked temperature changes, can frequently tolerate driving automotive equipment, can continuously tolerate exposure to dust fumes, gases and noise (limitations due to diabetes).  The doctor listed the objective signs of pain to include joint deformity, spinal deformity and muscle spasm with such pain being severe.  The doctor listed these limitations as permanent and stated that plaintiff's condition prevents him from working an 8-hour day on a regular basis.  (Tr. 326-28).  Dr. Saulog completed a RFC assessment on March 28, 2002 stating the conditions had been present since 1997 and included the ability to sit 4 hours in an 8-hour workday, stand 4 hours in an 8-hour workday, walk ½ hour in an 8-hour workday, work ½ hour in an 8-hour workday, can lift up to 10 pounds occasionally but 11-100 pounds never due to peripheral neuropathy, can carry up to 10 pounds occasionally but never 11-100 pounds due to peripheral neuropathy, can use hands for repetitive actions such as simple grasping and pushing and pulling but not for fine manipulation, can use feet for repetitive actions (foot controls) with both feet, can occasionally Bend, Squat, Crawl, Climb, Reach above, Stoop, Crouch and Kneel due to lumbar disk herniation and cervical disk buldge,

can tolerate exposure to unprotected heights and being around moving machinery frequently, can tolerate exposure to marked temperature changes, driving automotive equipment, exposure to dust fumes, gases and noise continuously.  The doctor listed the objective signs of pain as X-ray and spinal deformity, with moderate pain and that plaintiff's condition prevents him from working an 8-hour day on a regular basis. (Tr. 348-350).  Dr. Veggeberg completed an additional RFC assessment on April 2, 2002 which was identical to the 2000 RFC except in the latter assessment he determined plaintiff could use his hands for repetitive actions of fine manipulation (Tr. 324) and he failed to answer whether plaintiff's condition prevented him from working an 8-hour workday. (Tr. 325).  Plaintiff testified at the administrative hearing that in 2000 he could sit about 15 minutes before having pain in his low back, he could walk about two blocks, could lift maybe 40 pounds but not very often, could not reach overhead, and could drive. (Tr. 465-66).  He also testified he could do paperwork and watch tv although his vision occasionally got blurry (Tr. 467), he could do dishes and help a little with the laundry and that he could mow although it might take three days to do the whole yard. (Tr. 469).  The ALJ then posed a hypothetical to a Vocational Expert (VE) as follows:

> Limited to lifting or carrying 30 pounds occasionally, 15 frequently.  Require a sit/stand option... Limited to occasional pushing and pulling with the extremities.  Occasional postural movements.  Very limited in climbing and balancing.  I'd say he probably would not be able to tolerate barely any vocational relevant balancing, climbing would be limited to one or two short stairwells and so forth.  Occasional overhead reaching, limited in feeling and manipulation.  And obviously could not work on heights.  And would have limited ability to tolerate noise and vibration.  Moderately limited in concentration, persistence and pace.  And this is primarily secondary to a combination of pain and medication and fatigue, not to inherent mental disorders.

(Tr. 476-77). Based upon this hypothetical the VE determined such a person could not perform plaintiff's past relevant work but would be able to perform the jobs of parking lot attendant,

cashier and press operator. (Tr. 477). As articulated by defendant, and as outlined above, the ALJ gave his reasons for discounting the opinions of plaintiff's treating physicians, particularly Dr. Veggeberg and Dr. Saulog. Further, argues defendant, a physician's opinion that a claimant is disabled or unable to work is not the type of opinion to be given controlling weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The question presented then is whether there is more than a scintilla but less than a preponderance, i.e. whether there is substantial evidence in the administrative record to support the ALJ's RFC determination. Additionally, even though this Court might disagree with the ALJ's assessment of plaintiff's credibility in light of his long standing work record and extensive medical treatment, the credibility assessment is particularly in the province of the ALJ, and the Court cannot substitute its judgment for the defendant's. In this case, not only did the ALJ find plaintiff's statements as to his limitations not credible, he also cited the medical evidence he considered in making the assessment. There was sufficient evidence to support the ALJ assessment and it cannot be said such assessment constituted reversible error. There also exists sufficient evidence to support the ALJ's RFC finding. The ALJ was entitled to rely on this evidence and to consider plaintiff's treating physician opinions as compared to the clinical testing. Although the ALJ could have adopted Dr. Veggeberg's findings as to plaintiff's RFC and found him disabled, there is enough evidence in the record to support the ALJ's rejection of that opinion as well as the part of Dr. Saulog's RFC which is contrary to the RFC found by the ALJ. Some of plaintiff's testimony at the administrative hearing contradicted Drs. Veggeberg and Saulog's limitations, e.g., plaintiff's ability to lift 40 pounds. Further, a great deal of Dr. Saulog's RFC finding is not inconsistent with the ALJ's hypothetical and RFC determination.

Consequently, even though plaintiff presents a strong case for disability, an evaluation of the administrative record under the "substantial evidence rule" reflects there was enough evidence to meet the substantial evidence standard and no reversible error has been shown.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of March 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections

must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

SS\R&R\HART.AFFIRM:3

14